# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
    Plaintiff,

v.                                                             Case No. 04-CR-282

CIRILO PERALTA-ESPINOZA
    Defendant.

## SENTENCING MEMORANDUM

Defendant Cirilo Peralta-Espinoza pleaded guilty to unlawful re-entry after deportation. The probation office prepared a pre-sentence report ("PSR"), which recommended an offense level of 13 (base level 8, U.S.S.G. § 2L1.2(a), plus 8 because defendant was deported after his conviction of an "aggravated felony," § 2L1.2(b)(1)(C), and minus 3 for acceptance of responsibility, § 3E1.1) and a criminal history category of III, producing an imprisonment range of 18-24 months under the sentencing guidelines.

Defendant objected to the 8 level enhancement under § 2L1.2(b)(1)(C), moved for a downward departure under § 5G1.3(c), and requested a sentence concurrent to one he was then serving in state prison. The government opposed his requests. In this decision I address the parties' contentions and set forth more fully the basis for the sentence imposed.

### I. FACTS AND BACKGROUND

Defendant was born in Mexico in 1965. He entered the United States illegally in 1985 in order to find work. In December 1990, he was granted resident alien status and in August 1994 admission as a permanent resident for employment purposes. However,

on December 5, 1994, defendant was convicted in Arizona state court of attempting to possess more than four pounds of marijuana, a felony under state law. He was placed on three years probation with 120 days in jail as a condition and removed from the United States on January 6, 1995.

In June 2004, defendant was found by Immigration and Customs Enforcement ("ICE") at the Racine County, Wisconsin jail, after his arrest for cocaine distribution. Defendant told the ICE agent that he paid a smuggler to assist him in illegally re-entering the United States in January 2003.[1] He stated that he crossed the border in Arizona, then took a bus to Racine, where he apparently had family. In October 2004, a state court judge sentenced defendant to five years in prison followed by five years of extended supervision on the cocaine charge. In June 2005, he pleaded guilty to illegal re-entry after deportation, contrary to 8 U.S.C. § 1326, in this court.

## II. SENTENCING PROCEDURE

In light of United States v. Booker, 543 U.S. 220 (2005), I follow a three-step sentencing procedure. First, I determine the applicable advisory guideline range, resolving any factual disputes and PSR objections necessary to that determination. Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply.[2] Finally, I determine the

---

[1] According to the PSR, defendant returned prior to 2003. Specifically, defendant told the PSR writer that he had been working in Wisconsin for four years prior to his arrest. The PSR also indicates that defendant purchased a home in Racine in 2002.

[2] The Seventh Circuit has held that the concept of "departures" has been rendered obsolete by its decisions applying Booker. "It is now clear that after Booker what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-Booker decisions that cabined the discretion of sentencing courts

2

appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Pallowick, 364 F. Supp. 2d 923, 925-26 (E.D. Wis. 2005).

### III. GUIDELINE DETERMINATION

Defendant objected to the 8 level enhancement under U.S.S.G. § 2L1.2(b)(1)(C). The enhancement applies if the defendant was deported after his conviction of "an aggravated felony." In recommending the enhancement, the PSR relied upon defendant's 1994 conviction of attempted possession of marijuana in Arizona state court. The facts of the case as related by the PSR suggest possession with intent to deliver, but the conviction was for possession only.[3] Although this offense was a felony under Arizona law, it would only be a misdemeanor under federal law, see 21 U.S.C. § 844(a). The question was whether, under these circumstances, the offense constituted an "aggravated felony" under § 2L1.2(b)(1)(C).

The commentary to § 2L1.2 explains that the term "aggravated felony" has the same meaning given that term in 8 U.S.C. § 1101(a)(43) – a provision applicable in both the immigration and criminal law contexts. See U.S.S.G. § 2L1.2 cmt. n. 3(A). In pertinent

---

to depart from guidelines that were then mandatory." United States v. Johnson, 427 F.3d 423, 426 (7th Cir. 2005). For purposes of appellate review, which is limited to determining whether the final sentence is "reasonable," this makes sense. The appellate courts are no longer required to ensure fealty to the guidelines, and sentences outside the range need not be justified under the old departure method. However, this does not mean that district courts should no longer consider departure motions. Booker requires district courts to consult the guidelines, including the Commission's policy statements concerning departures. While sentences outside the guidelines will, in many instances, be based on the § 3553(a) factors, the departure concept remains relevant for district courts.

[3]It is the offense of conviction that matters, not the underlying facts of the case. United States v. Jaimes-Jaimes, 406 F.3d 845, 850 (7th Cir. 2005); see also Shepard v. United States, 544 U.S. 13 (2005).

3

part, § 1101(a)(43) defines the term "aggravated felony" as "illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." 8 U.S.C. § 1101(a)(43)(B). Simple possession does not constitute "illicit trafficking in a controlled substance" under the first part of § 1101(a)(43), thus, I examined the second phrase, i.e. a "drug trafficking crime (as defined in section 924(c) of Title 18)." See Gonzales-Gomez v. Achim, 372 F. Supp. 2d 1062, 1065 (N.D. Ill. 2005).

Section 924(c) of Title 18 defines the term "drug trafficking crime" as "any felony punishable under the Controlled Substances Act ["CSA"] (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.)." 18 U.S.C. § 924(c)(2). Courts have adopted two competing interpretations of the phrase "any felony punishable under" the enumerated statutes listed in § 924(c)(2), see United States v. Palacios-Suarez, 418 F.3d 692, 695-96 (6th Cir. 2005); Masok v. Achim, No. 04-C-7503, 2005 U.S. Dist. LEXIS 8108, at *9-15 (N.D. Ill. Apr. 28, 2005); Gonzales-Gomez, 372 F. Supp. 2d at 1065-66, and the Seventh Circuit has not chosen sides.

The majority view – called the "guideline approach" or the "state felony approach" – is that the phrase means that a state drug conviction is a "drug trafficking crime" and therefore an "aggravated felony" if (1) the conviction is a felony under either state or federal law and (2) the conduct underlying the conviction is punishable under the CSA. Palacios-Suarez, 418 F.3d at 696; Gonzales-Gomez, 372 F. Supp. 2d at 1067. Under this view, it does not matter that the conduct would only be punishable as a misdemeanor under federal law. This approach has been adopted by the First, Second, Fourth, Fifth, Eighth,

4

Tenth and Eleventh Circuits in the criminal/sentencing context. See, e.g., United States v. Wilson, 316 F.3d 506, 513 (4th Cir. 2003); United States v. Pornes-Garcia, 171 F.3d 142, 148 (2d Cir. 1999); United States v. Simon, 168 F.3d 1271, 1272 (11th Cir. 1999); United States v. Hinojosa-Lopez, 130 F.3d 691, 694 (5th Cir. 1997); United States v. Briones-Mata, 116 F.3d 308, 309 (8th Cir. 1997); United States v. Cabrera-Sosa, 81 F.3d 998, 1000 (10th Cir. 1996); United States v. Restrepo-Aguilar, 74 F.3d 361, 365 (1st Cir. 1996).

The minority view – called the "hypothetical federal felony" or the "hypothetical felony" approach – reads the phrase "any felony punishable under [the CSA]" to mean any offense punishable as a felony under the CSA, regardless of the forum in which the conviction was actually obtained. Gonzales-Gomez, 372 F. Supp. 2d at 1066. Thus, under this approach, a state felony drug possession conviction (not involving any element of trafficking) that would only be punishable as a federal misdemeanor would not constitute an "aggravated felony" under § 1101(a)(43)(B). Palacios-Suarez, 418 F.3d at 695. This is the view originally adopted by the Board of Immigration Appeals ("BIA")[4] and is adhered to by the Sixth Circuit in the criminal/sentencing context, and the Second, Third and Ninth Circuits in the immigration contexts.[5] Id.

---

[4]In 2002, the BIA abandoned the hypothetical felony approach and decided to define the term "aggravated felony" based on the approach used in the particular circuit. Gonzales-Gomez, 372 F. Supp. 2d at 1068.

[5]The Second and Ninth Circuits construe the term "aggravated felony" in § 1101(a)(43)(B) differently for immigration purposes than for the sentencing enhancement under § 2L1.2. Id. at 697. The Third Circuit has not decided the issue in the sentencing context. Id. at 702 (Nelson, J., concurring). As the Sixth Circuit noted in Palacios-Suarez, the appears to be no good reason for interpreting the same statutory language differently based on the type of case. 418 F.3d at 697; id. at 701 (Nelson, J., concurring).

5

I concluded that the hypothetical felony approach made the most sense.

In order to decide the issue, I had to divine the meaning of the phrase "any felony punishable under [the CSA]" in § 924(c). The starting point of statutory construction is the plain language of the statute itself; if the words are clear I need go no further. See Cler v. Ill. Educ. Ass'n, 423 F.3d 726, 730 (7th Cir. 2005). Several courts following the guideline approach have found the phrase "any felony punishable under [the CSA]" to be unambiguous. Palacios-Suarez, 418 F.3d at 697 (citing Wilson, 316 F.3d at 512; United States v. Ibarra-Galindo, 206 F.3d 1337, 1339 (9th Cir. 2000); Simon, 168 F.3d at 1272; Restrepo-Aguilar, 74 F.3d at 364). These courts believe that the statute plainly applies to any felony if the underlying conduct could also be punished under the CSA. See, e.g., Restrepo-Aguilar, 74 F.3d at 364 (holding that the statutory definition in § 924(c) "plainly does not require that an offense, in order to be a drug trafficking crime, be subject to a particular magnitude of punishment if prosecuted under the CSA"). It seemed to me that, to the extent the statute's plain language supported either approach, it was the hypothetical felony view. The language "any felony punishable under [the CSA]" is most naturally read to mean that the crime must be a felony under the CSA. See United States v. Castillo, 406 F.3d 806, 814 (7th Cir. 2005) (stating that statutes are to be construed according to the ordinary and natural meaning of their language).

In adopting the guideline approach, the Ninth Circuit stated, "if Congress had intended [the hypothetical federal felony approach], it would have most naturally referred to offenses 'punishable as felonies under the Controlled Substances Act,' but it did not." Ibarra-Galindo, 206 F.3d at 1339. However, as the dissenting judge in Ibarra-Galindo noted, "it is a rare statute . . . that could not have been written more clearly than it was."

Id. at 1342 (Canby, J., dissenting). Indeed, if Congress had intended the guideline approach it could have just as easily written the statute to define a drug trafficking crime as "an offense punishable under the CSA and constituting a felony under either federal or state law." Id. at 1342 n.2 (Canby, J., dissenting). Thus, I found that the language of § 924(c) did not clearly support the guideline approach. See Palacios-Suarez, 418 F.3d at 697-98; see also Gonzales-Gomez, 372 F. Supp. 2d at 1069-70 ("As we look at the language 'any felony punishable under the CSA,' we find that although it could be interpreted in the manner suggested by the State Felony circuits, this provision could logically and consistently be read to include only those state drug offenses that would [be] punishable as felonies under federal drug laws.").

The courts following the guideline approach have also found support for their position in an application note to § 2L1.2. Palacios-Suarez, 418 F.3d at 698 (citing Wilson, 316 F.3d at 512; Ibarra-Galindo, 206 F.3d at 1339-40; Simon, 168 F.3d at 1272; Briones-Mata, 116 F.3d at 309; Restrepo-Aguilar, 74 F.3d at 365); Masok, 2005 U.S. Dist. LEXIS 8108, at *10. Application note 2 to § 2L1.2 provides: "For purposes of subsection (b)(1)(A), (B), and (D), 'felony' means any federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2 cmt. n. 2. While this note counsels that state felonies count for purposes of the enhancements contained in § 2L1.2(b)(1)(A), (B), and (D),[6] it conspicuously omits reference to § 2L1.2(b)(1)(C), the

---

[6]Section 2L1.2(b)(1)(A) provides for a 16 level enhancement for crimes of violence, drug trafficking offenses for which the sentence imposed exceeded 13 months, firearms offenses, child pornography offenses, national security or terrorism offenses, human trafficking offenses, and alien smuggling offenses. Section 2L.12(b)(1)(B) provides for a 12 level enhancement for felony drug trafficking offenses for which the sentence imposed was 13 months or less. Section 2L1.2(b)(1)(D) provides for a 4 level enhancement for any

7

"aggravated felony" provision at issue here. Palacios-Suarez, 418 F.3d at 698. The Commission's omission of § 2L1.2(b)(1)(C) from this note actually supports the hypothetical felony approach.[7] See generally Dersch Energies v. Shell Oil Co., 314 F.3d 846, 861 n.15 (7th Cir. 2002) (applying the canon of statutory construction expressio unius est exclusio alterius, which provides that to express or include one thing implies the exclusion of the other).

Finally, courts applying the guideline approach have pointed to 21 U.S.C. § 802(13) – part of the "definitions" section of the CSA – which defines the term "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." However, § 924(c) does not direct the court to any particular provision of the CSA for purposes of defining the term "felony." Gonzales-Gomez, 372 F. Supp. 2d at 1070. Nor does § 802(13) define any substantive offense under the CSA; it merely defines "felony" for purposes of sentencing enhancements for the substantive crimes under the CSA. Gerbier v. Holmes, 280 F.3d 297, 309 (3d Cir. 2002). Further, the definition in § 802(13), by its own terms, is applicable only within Title 21. Palacios-Suarez, 418 F.3d at 698. The phrase at issue in the present case is found in § 924(c)(2) of Title 18, which has its own definition of the term "felony." Id. "For purposes of Title 18, a felony is defined as a federal offense where the maximum punishment exceeds one year." Id. (citing 18 U.S.C. § 3559(a)(5)). Relying on the Title 18 definition, the BIA and the Third Circuit have concluded that a drug trafficking crime under 18 U.S.C. § 924(c)(2) must be a felony

---

other felony.

[7]Section 2L1.2(b)(1)(C) has its own application note, which, as noted above, directs the court to 8 U.S.C. § 1101(a)(43). U.S.S.G. § 2L1.2 cmt. n.3.

8

violation of the federal drug laws, i.e., any offense under those laws where the maximum term of imprisonment authorized exceeds one year. Id. (citing In Re L-G, 21 I. & N. Dec. 89, 94 (1995)); Gerbier, 280 F.3d at 310-11; see also Gonzales-Gomez, 372 F. Supp. 2d at 1070. While I cannot say that the language of these statutory provisions clearly requires adoption of the hypothetical felony approach, it certainly casts strong doubt on the guideline approach. See Palacios-Suarez, 418 F.3d at 698.

When a statute is ambiguous, the court looks to the statute's legislative history and motivating policies in an attempt to divine its meaning. See Lara-Ruiz v. INS, 241 F.3d 934, 942 (7th Cir. 2001); Central States, Southeast & Southwest Areas Pension Fund v. Robinson Cartage Co., 55 F.3d 1318, 1323 (7th Cir. 1995). A review of the history of § 924(c) supports the hypothetical felony approach.

Until 1988, "§ 924(c)(2) defined the term 'drug trafficking crime' as 'any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)).'" Palacios-Suarez, 418 F.3d at 698 (quoting 18 U.S.C. § 924(c)(2) (1982 & Supp. IV 1986) (emphasis in Palacios-Suarez); see also Gonzales-Gomez, 372 F. Supp. 2d at 1070. Thus, the statute plainly limited "drug trafficking crimes" to federal felony offenses. Palacios-Suarez, 418 F.3d at 698-99. In 1988, Congress amended § 924(c) to define the term "drug trafficking crime" as "any felony punishable under" the three enumerated statutes. Id. at 699. The section of the Act that amended § 924(c)(2) was labeled a "clarification of [the] definition of drug trafficking crimes in which use or carrying of firearms and armor piercing ammunition is prohibited." The Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 6212, 102 Stat. 4181, 4360; see also Gonzales-Gomez, 372

9

F. Supp. 2d at 1070. There is no indication in either the wording of the Act or the legislative history that Congress intended this "clarification" to expand the definition of "drug trafficking crime" to include "'simple drug possession punished as a felony by a state.'" Palacios-Suarez, 418 F.3d at 699 (quoting Cazarez-Gutierrez v. Ashcroft, 382 F.3d 905, 915 (9th Cir. 2004)). In other words, "the original understanding of the term as limited to federal felonies was unchanged." Id.; see also Gerbier, 280 F.3d at 309 ("As a clarification, the 1988 amendments did nothing to change the fact that the felony violation must be of federal, not state, law."). As the court stated in Gonzalez-Gomez:

> The 1988 amendment changing the language to "any felony punishable under the Controlled Substances Act" was not intended to change the fact that the felony violation must be of federal, and not state law. Rather, as the Congressional Record indicates, the amendment was intended to make clear that "drug trafficking crime" would include the above-mentioned firearm and armor piercing offenses, as well as "possession with intent to distribute, or attempt and conspiracy violations," all of which were are not covered in the pre-1988 formulation of section 924(c), but were covered under the CSA. 134 Cong. Rec. S17360, S17363 (Section Analysis of Judiciary Comm. Issues in H.R. 5210 by Sen. Biden) (1988); Pub. L. No. 100-690, § 6212; see generally Cazarez-Gutierrez, 382 F.3d at 915. Senator Biden, who was chairman of the Senate Judiciary Committee and a principal drafter of the Act, stated that the amendment "clarifies the scope of 18 U.S.C. §§ 924(c) and 929(a)." 134 Cong. Rec. at S17363. Thus, the changes made in 1988 as now codified in section 924(c) were never intended to broaden the provision's scope to include state offenses, but rather to simply clarify the scope in terms of the types of federal crimes included.

Gonzales-Gomez, 372 F. Supp. 2d at 1071; see also Masok, 2005 U.S. Dist. LEXIS 8108, at *20 ("The legislative history indicates that the amendment was designed to clarify that 'drug trafficking crimes' include "possession with intent to distribute, or attempt and conspiracy violations.'").

The legislative history of 8 U.S.C. § 1101(a)(43) also lends support to the hypothetical felony approach. In March 1990, the BIA adopted this approach, holding that

10

"a state conviction sufficiently analogous to a felony offense" under the enumerated federal statutes is a "drug trafficking crime" under § 924(c)(2) and therefore "an aggravated felony" under § 1101(a)(43). Palacios-Suarez, 418 F.3d at 699 (citing In re Barrett, 20 I. & N. Dec. 171, 175 (BIA 1990)). Several months later, Congress appeared to endorse the BIA's approach in Barrett, amending § 1101(a)(43) by adding that the term aggravated felony "'applies to offenses described in the previous sentence whether in violation of Federal or State law.'" Id. at 699 (quoting Immigration Act of 1990, Pub. L. No. 101-649, § 501(a)(5), 104 Stat. 4978, 5048). The House Committee report on the bill stated:

> Current law defines "aggravated felony" to mean drug trafficking, firearm or explosive device trafficking, and murder (8 U.S.C. § 1101(a)(43)). Current law clearly renders an alien convicted of a Federal drug trafficking offense an aggravated felon. It has been less clear whether a state drug trafficking conviction brings that same result, although the Board of Immigration Appeals in Matter of Barrett (March 6, 1990) has recently ruled that it does. Because the Committee concurs with the recent decision of the Board of Immigration Appeals and wishes to end further litigation on this issue, section 1501 of H.R. 5269 specifies that drug trafficking (and firearms/destructive device trafficking) is an aggravated felony whether or not the conviction occurred in state or Federal court.

Id. (quoting H.R. Rep. No. 101-681, pt. 1, at 147 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6553). While it appears that Congress's primary concern in this bill was to ensure that state (as well as federal) offenses qualified as "aggravated felonies," and I do not wish to place undue emphasis on the report, this history does suggest that "Congress was concerned specifically with drug trafficking crimes, which are treated as felonies under the CSA, rather than simple drug possession crimes which would only qualify as federal misdemeanors." Id. at 699-700; see also Gonzales-Gomez, 372 F. Supp. 2d at 1072-73 (noting that Congress was aware of and expressly approved the Barrett decision in the 1990 amendments, and that it had in other areas "specifically singled out BIA

11

interpretations of which it disapproved"); Masok, 2005 U.S. Dist. LEXIS 8108, at * 22 (noting that although Congress has expanded crimes defined as "aggravated felonies" for immigration purposes since 1990, it has never altered the definition of "drug trafficking crime").

>Thus,

>the legislative history indicates that: (1) in adopting the particular language "any felony punishable under the CSA" in section 924(c), Congress sought to include within its scope certain federal firearms, attempt, and conspiracy crimes, but not to include state felonies; (2) in including the aggravated felony provisions in the INA, Congress sought to exclude "a particularly dangerous class of 'aggravated alien felons;'" (3) that Congress approved of the Hypothetical Federal Felony approach as applied by the BIA in Matter of Barrett; and (4) that, perhaps most significantly, Congress did not act to change the well-established Barrett precedent after it was applied by the BIA in Davis and L-G, despite making other significant changes in the specific area and singling out other BIA rulings of which it disapproved.

Gonzales-Gomez, 372 F. Supp. 2d at 1073.

To the extent that the statute's history does not definitively resolve the question, I find that the statute's purposes solidify my conclusion that the hypothetical felony approach is proper. Immigration statutes, such as 8 U.S.C. § 1101(a)(43), are to be interpreted uniformly, consistent with Congress's power to "establish a uniform Rule of Naturalization." Gonzales-Gomez, 372 F. Supp. 2d at 1073 (citing U.S. Const. art. 1, § 8, cl. 4.); see also Masok, 2005 U.S. Dist. LEXIS 8108, at *14 (noting the overriding presumption favoring the uniform application of immigration laws, absent plain indication that Congress intended to incorporate state variation). The Seventh Circuit has held that uniformity in the application of immigration laws and, in particular, in the application of the "aggravated felony" provision, is critical. See United States v. Martinez-Garcia, 268 F.3d 460, 465 (7th Cir. 2001) ("In determining whether a criminal conviction falls within one of the statutory

predicate offenses designated as aggravated felonies by Congress, the uniform application of federal law requires that we identify and apply the 'generic' elements of the felonious activity involved, rather than the inconsistent titles, elements and definitions used in the statutes of the various states."). The Seventh Circuit has repeatedly declined to rely on state definitions of crimes, which would lead to inconsistent results between jurisdictions. Gonzales-Gomez, 372 F. Supp. 2d at 1074-75 (citing Martinez-Garcia, 268 F.3d at 465; Solorzano-Patlan v. INS, 207 F.3d 869, 874 (7th Cir. 2000); Karapetian v. INS, 162 F.3d 933, 937 (7th Cir. 1998)). Adoption of the state felony approach would be contrary to this rule and would allow the application of a federal statute to be governed by the vagaries of state law. See Masok, 2005 U.S. Dist. LEXIS 8108, at *24 (adopting the hypothetical felony approach in light of the legislative history and the importance of uniform application of the immigration laws).

Finally, to the extent there remained any doubt, the rule of lenity directed me to apply the hypothetical felony approach. The rule provides that if, after resort to the text, history and motivating purposes of the statute, the court still cannot divine its meaning it must construe the statute narrowly in favor of the defendant. Lara-Ruiz, 241 F.3d at 942 (citing Moskal v. United States, 498 U.S. 103, 108 (1990)). In Palacios-Suarez, concurring Judge Nelson wrote:

> At the very least, it seems to me, the critical language in 18 U.S.C. § 924(c)(2) – "any felony punishable under the Controlled Substances Act" – could reasonably be construed as meaning either "any offense punishable as a felony under the Controlled Substances Act" or "any offense that constitutes a felony under state or federal law and is punishable under the Controlled Substances Act." There being two arguably permissible constructions of this statutory language, the rule of lenity requires us to adopt the construction that is more favorable to the defendant.

418 F.3d at 702 (Nelson, J., concurring).

Therefore, for all of these reasons, I adopted the hypothetical felony approach and concluded that defendant's felony possession conviction was not an aggravated felony under § 1101(a)(43). I acknowledged that, as the government stated in its response to the objection, this is the minority view. However, for the reasons stated, it is the better reasoned view and appears to be gaining traction. Although the Seventh Circuit has not decided the issue, three district courts within this circuit have recently adopted the hypothetical felony approach (albeit in the immigration context). See Masok v. Achim, No. 04-C-7503, 2005 U.S. Dist. LEXIS 8108 (N.D. Ill. Apr. 28, 2005); Gonzales-Gomez v. Achim, 372 F. Supp. 2d 1062 (N.D. Ill. 2005); Agate v. Dept. of Homeland Security, No. 05-C-1142, 2005 U.S. Dist. LEXIS 7676 (N.D. Ill. Apr. 11, 2005).

Because defendant's possession offense did not qualify as an aggravated felony, the 8 level enhancement did not apply. Instead, this conviction qualified defendant for a 4 level enhancement under § 2L1.2(b)(1)(D). As noted above, this provision applies to "other" felonies, as defined by federal, state or local law. See U.S.S.G. § 2L1.2 cmt. n. 2. Therefore, the offense level was 10 (base level 8, plus 4 under § 2L1.2(b)(1)(D), and minus 2 for acceptance of responsibility),[8] and the revised imprisonment range was 10-16 months.[9]

---

[8] The 3rd acceptance point was no longer available because the adjusted level was less than 16. U.S.S.G. § 3E1.1(b).

[9] The finding that defendant's felony possession offense was not an "aggravated felony" also affected the statutory maximum penalty under 8 U.S.C. § 1326(b). However, this did not affect the ultimate sentence.

14

## IV. DEPARTURE MOTION

Defendant moved for a departure under U.S.S.G. § 5G1.3(c), requesting that I reduce his sentence to account for the time he spent in state custody after being found by ICE. As noted, he was located by ICE in the Racine County Jail in June 2004 and sentenced in state court in October 2004 to five years in prison. Defendant, in effect, sought credit for the time spent in state custody from the date he was found to the date of sentencing on the instant offense.

Courts have the discretion to adjust a federal sentence to account for the lost opportunity to serve more of it concurrently with an existing state term. See United States v. Lechuga-Ponce, 407 F.3d 895, 897-98 (7th Cir. 2005); United States v. Jones, 233 F. Supp. 2d 1067, 1076 (E.D. Wis. 2003). However, under the circumstances of this case, I declined to so exercise my discretion. There was no indication of overlap between the state case and this case. Nor was there any indication that the government improperly delayed in indicting defendant. He was found in June 2004 and indicted in December 2004. The case pended for some time, but not due to any fault of the government. Finally, I found that a departure would, given the relatively low guideline range and the facts of the case, including most significantly defendant's new criminal conduct on re-entry, unduly depreciate the seriousness of the offense. Therefore, although within my discretion, I denied the motion.

## V. SENTENCE

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

15

(2) the need for the sentence imposed–

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

My ultimate task is, after considering all of the above circumstances, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2).

**A.    Nature of Offense**

As noted, defendant was deported in 1995 after his conviction of a felony drug offense in Arizona. There was some discrepancy as to when he re-entered: he told ICE that he paid a smuggler to assist him in January 2003, but advised the PSR writer that he was in Racine for several years prior to that. In any event, he was convicted of drug dealing in Racine in October 2004. His commission of a new crime upon re-entry was an aggravating factor. There was no indication that he returned to the United States to live with and support his family, which I have in other cases found to be a mitigating factor. See United States v. Peralta-Espinoza, 383 F. Supp. 2d 1107, 1112 (E.D. Wis. 2005) ("A

defendant who returns to be with his wife and children . . . is much more deserving of leniency than one who returns to sell drugs, as did the defendant in the present case."); cf. United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 964 (E.D. Wis. 2005) (reducing sentence where defendant re-entered to be with his family); United States v. Martinez-Alvarez, 256 F. Supp. 2d 917, 922 (E.D. Wis. 2003) (departing on this basis). Instead, his wife is a Mexican citizen, and she and defendant's children await him in Mexico.

**B.    Character of Defendant**

Defendant had a serious criminal record, with two prior drug felonies. On the positive side, he did originally have legal status in this country, and he had some legitimate employment history here. He was married with three children and, as noted, will apparently be re-united with his family in Mexico after he is removed.

**C.    Needs of Public**

There was no evidence that defendant was physically dangerous, but there was a risk of recidivism given his record. There was also a need for a period of confinement to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and deter others.

**D.    Consideration of Guidelines and Imposition of Sentence**

The guidelines called for a term of 10-16 months, and I found that a sentence toward the upper end of that range was sufficient but not greater than necessary. Neither party requested and I saw no reason to impose a non-guideline sentence. I imposed a

17

sentence toward the upper end of the range in light of defendant's lack of legitimate purpose for re-entering and new criminal conduct in this country.

Defendant requested that the sentence run concurrent to his state term. Under 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3(c), I had discretion to impose the sentence concurrent or consecutive. The state sentence was determinate and the confinement portion was set to end on April 19, 2008, with five years of extended supervision to follow. Considering the factors set forth in § 3553(a), I imposed the instant sentence to run partially concurrently. See U.S.S.G. § 5G1.3 cmt. n.3 (setting forth factors court should consider). I did not find that any of the purposes of sentencing would be served by imposing a fully consecutive sentence. It was unlikely that any additional deterrent value would be served, and defendant would be deported upon completion of his sentences. Thus, the need to protect the public was diminished. I believed there to be little benefit to the public in keeping him here longer. However, a fully concurrent sentence resulted in no additional penalty for his unlawful re-entry. I believed that there should be some incremental punishment for this crime in order to satisfy § 3553(a)(2)(A).

Therefore, I committed defendant to the custody of the Bureau of Prisons for 14 months, 7 months to run concurrent with the state sentence and 7 months consecutive. I found this sufficient under all of the circumstances. I further noted that, even if I had agreed with the government on the guideline issue, I would have imposed the same final sentence. Defendant had more than two years left to serve on his state sentence, and a prison term within the guideline range advocated by the government would, if not run at least partially consecutive, have been swallowed up by the state sentence. Thus, if I had

Case 2:04-cr-00282-LA   Filed 02/03/06   Page 18 of 19   Document 28

adopted the government view, I would still have imposed a sentence calling for 7 months of additional imprisonment.

Based on his financial situation, I determined that defendant did not have the ability to pay a fine and so waived the fine. Upon release, I ordered a two year supervised release term, the conditions of which appear in the judgment.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin, this 3rd day of February, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge